RECORD NO. 16-1214

*In The*

# United States Court of Appeals

### For The Fourth Circuit

**BRANDON CARTER; ERICA CARTER,**

*Plaintiffs – Appellants*,

**v.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CWABS, INC. ASSET-BACKED CERTIFICATES TRUST 2005-14; THE BANK OF NEW YORK TRUST COMPANY, N.A., solely in its capacity as Trustee for the CWABS, Inc. Asset-Backed Certificates Trust 2005-14,**

*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON**

———————————

**BRIEF OF APPELLEES**

———————————

Nathan J. Taylor
Wm. Grayson Lambert
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
(704) 343-2113

*Counsel for Appellees*

## **RULE 26.1 DISCLOSURE STATEMENT**

CWABS Inc. Asset-Backed Certificates Trust 2005-14 has no direct parent corporation. It has no shares of stock. However, there are potentially thousands of corporations that could own a certificate in the trust. It is theoretically possible that there is an entity that has more than 10 percent of the certificates held.

The Bank of New York Mellon is a wholly owned subsidiary of The Bank of New York Mellon Corporation. The Bank of New York Mellon Corporation owns more than 10 percent of the stock of the Bank of New York Mellon.

MERS is 100 percent owned by MERSCORP Holdings, Inc.

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT................................................................i

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF THE CASE.........................................................................1

SUMMARY OF THE ARGUMENT ................................................................5

STANDARD OF REVIEW ...........................................................................7

ARGUMENT ...........................................................................................8

    I.    Ratification Was Properly and Clearly Raised in the District Court.....................................................................................8

    II.    The Carters' Fraud Claim Both Fails on the Merits and Is Untimely...............................................................................9

        A.    The Carters' Complaint Fails to Plead Fraud with Particularity.........................................................................10

        B.    The Discovery Rule Does Not Toll the Expiration of the Limitations Period Because the Carters Knew or Should Have Known About the Alleged Forgery When They Made Their First Loan Payment ..............................................14

        C.    North Carolina's Statute Tolling Claim Against Out-of-State Defendants Is Irrelevant Because the Complaint Alleges the Trust Engaged in Fraud .........................................16

        D.    The Re-Recording of the Deed of Trust Is Irrelevant to the Timeliness of the Complaint ..............................................20

    III.    The Carters' Shift in the Focus of Their Quiet Title Claim Does Not Save It from Dismissal ..................................................20

IV.    A Claim in Recoupment Is Not an Affirmative Claim, so It Was
       Properly Dismissed..................................................................................22

CONCLUSION ............................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)........................................................................21

*Am. Travel Corp. v. C. Carolina Bank & Trust Co.*,
   291 S.E.2d 892 (N.C. Ct. App. 1982)..........................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................8

*Beach v. Ocwen Fed. Bank*,
   523 U.S. 410 (1998)........................................................................22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................7, 8

*Biesecker v. Biesecker*,
   302 S.E.2d 826 (N.C. Ct. Ap. 1983)..............................................13

*Brockington v. Boykins*,
   637 F.3d 503 (4th Cir. 2011) ..........................................................7

*Bull v. United States*,
   295 U.S. 247 (1935)........................................................................22

*Christian v. Yarborough*,
   32 S.E. 383 (N.C. 1899) ..................................................................9

*Cochrane v. Turner*,
   582 F. Supp. 971 (W.D.N.C. 1983)..........................................17, 19

*Cooper v. Floyd*,
   177 S.E.2d 442 (N.C. Ct. App. 1970)............................................16

*Daniel Boone Complex, Inc. v. Furst*,
    258 S.E.2d 379 (N.C. Ct. App. 1979)............................................................10

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) ........................................................................7

*Gibson v. Am.'s Servicing Co.*,
    No. 5:10-CV-342-FL, 2010 WL 4974552 (E.D.N.C. Nov. 30, 2010)..........14

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ......................................................................11

*Hinson v. United Fin. Servs., Inc.*,
    473 S.E.2d 382 (N.C. Ct. App. 1996)..........................................................20

*JPMorgan Chase Bank, N.A. v. Guertin*,
    No. CA 3:12-2363-MBS, 2012 WL 5550770 (D.S.C. Nov. 15, 2012).........14

*Kloth v. Microsoft Corp.*,
    444 F.3d 312 (4th Cir. 2006) ........................................................................7

*Leonard v. Power Co.*,
    70 S.E. 1061 (N.C. 1911) ............................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................21

*Media Network, Inc. v. Long Haymes Carr, Inc.*,
    678 S.E.2d 671 (N.C. Ct. App. 2009)..........................................................11

*Melton v. Family First Mortg. Corp.*,
    576 S.E.2d 365 (N.C. Ct. App.), *aff'd*,
    597 S.E.2d 672 (N.C. 2003) ......................................................................14

*Occupy Columbia v. Haley*,
    738 F.3d 107 (4th Cir. 2013) ........................................................................7

*Ostrzenski v. Seigel*,
    177 F.3d 245 (4th Cir. 1999) ......................................................................11

*Parker v. White*,
    71 S.E.2d 122 (N.C. 1952) ...........................................................................10

*Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    146 S.E.2d 390 (N.C. 1966) .........................................................................9

*Raper v. Oliver House, LLC*,
    637 S.E.2d 551 (N.C. Ct. App. 2006)..........................................................13

*Rounsaville v. North Carolina Home Fire Insurance Co.*,
    50 S.E. 619 (N.C. 1905) .........................................................................14, 15

*Seigel v. Patel*,
    513 S.E.2d 602 (N.C. Ct. App. 1999).........................................................15

*Skinner v. Preferred Credit*,
    616 S.E.2d 676 (2005), *aff'd*,
    638 S.E.2d 203 (2006) ..................................................................17, 18, 19

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009) .........................................................................7

*Weidman v. Exxon Mobil Corp.*,
    776 F.3d 214 (4th Cir. 2015) .........................................................................7

## **STATUTES**

10 Del. C. § 8106 ..................................................................................................19

Cal. Code. Civ. Proc. § 338(d)..............................................................................19

N.C. Gen. Stat. § 1-21.......................................................................16, 17, 18, 19

N.C. Gen. Stat. § 1-52(9) ......................................................................................15

N. C. Gen. Stat. § 1-75.4 .......................................................................................18

N.C. Gen. Stat. § 24-2 ...........................................................................................18

## **<u>RULES</u>**

Fed. R. Civ. P. 7 .................................................................................8

Fed. R. Civ. P. 9(b) .......................................................................6, 11

Fed. R. Civ. P. 12(b)(6).......................................................................7

Fed. R. Civ. P. 59(e).............................................................................5

## STATEMENT OF THE CASE

Appellants Brandon and Erica Carter ("Carters") filed this lawsuit on July 11, 2014, contending that Appellee CWABS, Inc. Asset-Backed Certificates Trust 2005-14 ("Trust"), among others, defrauded them and clouded title to their real property located in Wake County, North Carolina.[1]

This case arises from the Carters' purchase of property near Raleigh, North Carolina and their subsequent default on the loan that enabled them to purchase that property. On September 30, 2005, Brandon Carter executed an Offer to Purchase and Contract for real property located at 6317 Silver Springs Court, Willow Spring, North Carolina ("Property"). JA011. Mr. Carter sought financing for the purchase price with Right Choice Mortgage, Inc. ("Right Choice"). JA011–12.

The crux of the Carters' allegations focuses on the execution of documents for the purchase of the Property. They allege that, on November 30, 2005, Beth M. Holly notarized a "Specific Power of Attorney" ("POA"), purportedly executed by the Carters, granting Mark Sellars the right to act as the Carters' attorney-in-fact

---

[1] Although Mortgage Electronic Registration Systems, Inc. and the Bank of New York Mellon as trustee for the Trust are parties to this appeal, the only claims that the Carters have not abandoned are brought directly at the Trust. The Trust and its trustee should be unified in interest, but because of how the claims are pled in the complaint, this brief focuses on the Trust as the only appellee against whom any claims remain. The arguments, however, apply equally to the Bank of New York Mellon as the trustee.

for the purchase of the Property. JA012. The Carters state that they did not appear before Ms. Holly on the day that the POA was signed and that "some other individual forged their names" on the document. JA012.

Mr. Sellars used the POA to execute various documents necessary to complete the Carters' purchase the Property. JA013. Specifically, without their consent, the Carters contend, Mr. Sellars executed an Adjustable Rate Note ("Note") in the amount of $127,520.00 in favor of Countrywide Home Loans, Inc.[2] ("Countrywide") and a deed of trust ("Deed of Trust" and, collectively with the Note, the "Loan."). JA013. Generally, the Carters refer to the foregoing sequence of events as a forgery.

Despite the fact that the Loan was purportedly executed without their knowledge or consent, the Carters still accepted the arrangement and made regular monthly payments under the terms of the Loan for approximately two years. JA020. Moreover, the Property was deeded to the Carters on the same date the Loan documents were executed. JA128–30. The Carters do not deny that they intended to enter into an agreement for financing with Right Choice and/or Countrywide in order to fulfill the Offer to Purchase contract related to the Property.

---

[2] The Note identifies "America's Wholesale Lender" as the Lender, which was an assumed name for Countrywide. JA013.

2

Nevertheless, the Carters maintain that Countrywide "fraudulently originated" the Loan to help secure a financial benefit it would receive under a prospectus it entered into on November 16, 2005. JA015. Under the prospectus, CWABS, Inc. would deposit a pool of loans worth approximately two billion dollars in exchange for bond certificates issued from the Trust of that same value. JA013. The Carters allege that CWABS, Inc. and the Trust were wholly owned subsidiaries of Countrywide and operated by Countrywide executives, directors, and officers. JA013.

The Carters contend that Countrywide transferred its interest in the Note to CWABS, Inc. as part of a sale of the relevant loan pool. JA014. Thereafter, CWABS, Inc. transferred the Note to the Trust in exchange for bond certificates. JA016–17. The Carters allege that these transfers were designed to ensure a "true sale" occurred even though each party to the transaction was Countrywide or one of its wholly owned subsidiaries. JA017.

In 2008, BAC Home Loan Servicing, LP ("BACHLS") "serviced the Trust" to which the Note had been transferred.[3] JA019. The Carters defaulted on the Loan, and "the Note was called and [BACHLS] accelerated the balance" in May 2011. JA020.

_____

[3]     The phrase "serviced the Trust" is ambiguous. The Trust understands it to mean that BACHLS was the loan servicer.

Shortly after the Carters' default, BACHLS, as attorney-in-fact for the Trust, appointed Trustee Services of Carolina, LLC ("TSC") as the substitute trustee under the Deed of Trust on June 11, 2011, for the purpose of initiating a foreclosure proceeding. JA099–100. On July 26, 2011, TSC filed a petition to foreclose the Carters' Deed of Trust under power of sale alleging the Trust to be the holder of the Note and Deed of Trust.[4] JA021.

The Carters filed this action against the Trust, the Bank of New York Mellon Trust Company, N.A. in its capacity as trustee for the Trust, CWABS, Inc., and Mortgage Electronic Registration Systems, Inc. ("MERS"). JA010. In their complaint, the Carters enumerated causes of action for (1) quiet title/declaratory action (Count I); (2) fraud (Count II); (3) recoupment (Count III); (4) civil conspiracy (Count IV); (5) violations of the North Carolina Real Property Marketable Title Act (Count V); (6) slander of title (Count VI); and (7) violations of the Unfair and Deceptive Trade Practices Act (Count VII). Only Counts I through IV were alleged against the Trust. Counts V through VII were alleged against only MERS, which was also named in Count II. CWABS, Inc. was named only in Count IV.

---

[4]    After the foreclosure was initiated, the Carters claim BANA, on behalf of the Trust, re-recorded the purportedly forged Deed of Trust on August 9, 2011 to reflect a change in priority. JA021.

The defendants moved to dismiss the complaint pursuant to Rule 12(b)(6). JA108. Before the District Court ruled on that motion, the Carters voluntarily dismissed without prejudice their claim against CWABS, Inc. and Count V for violations of the North Carolina Real Property Marketable Title Act. JA205.

The District Court granted the motion to dismiss. JA207–25. The Carters then moved to alter or amend the judgment pursuant to Rule 59(e). JA227. The District Court denied that motion. JA236–37. The Carters appealed both the order granting the motion to dismiss and the order denying their motion to alter or amend judgment. JA238.

In their brief, the Carters abandon their appeal of the denial of their motion to alter or amend the judgment. *See* Appellants' Br. 3. Additionally, the Carters also expressly abandon their claim for civil conspiracy (Count IV) against the Trust and all claims against MERS (Counts II and V-VII). *See* Appellants' Br. 7. As a result, the Carters only appeal the District Court's dismissal of Counts I, II, and III and only with respect to the Trust as a defendant.

## <u>SUMMARY OF THE ARGUMENT</u>

The Carters provide no reason to reverse the District Court's order dismissing the case. *First*, ratification was clearly and properly raised in the District Court, and given the obvious nature of that issue—the Carters even allege

that they moved into the Property and made payments on the Loan—there is no reason ratification should not have come up at this early stage of the litigation.

*Second*, the Carters' fraud claim fails for multiple reasons. It is not sufficiently pled under Federal Rule of Civil Procedure 9(b), as there are no specific allegations setting forth the who, what, where, and when of the alleged fraud, particularly with respect to what the Trust allegedly did as part of any fraud. Moreover, the fraud claim is untimely. The Carters must have known about any alleged fraud no later than January 2006 when they made their first Loan payment. Under North Carolina's three-year statute of limitations, their claim was barred in January 2009, more than two years before this lawsuit was filed. None of the Carters' theories about tolling or re-starting the statute of limitations saves their claims from this straightforward statute-of-limitations analysis.

*Third*, the Carters' quiet title claim also lacks merit. In their complaint, this claim was based on the competing interest claimed under what they alleged was a forged Deed of Trust. But on appeal, the claim has morphed into one based on the priority of multiple security interests. Not only is this an improper attempt to argue outside the four corners of the complaint, the Carters have no standing to bring a claim based on the interests of the lienholders, among whom there is no dispute.

*Fourth*, the Carters' claim in recoupment was properly dismissed because a claim in recoupment is defensive in nature. It is not an affirmative claim. Because

6

the Carters are not facing any counterclaims here, they have no basis to state any claim in recoupment.

## STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir.). As this Court has repeatedly said, "a complaint . . . must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept well-pleaded factual allegations as true, it "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (alteration in original) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

This Court has made clear that dismissing a complaint pursuant to Rule 12(b)(6) "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)).

## ARGUMENT

**I.    Ratification Was Properly and Clearly Raised in the District Court.**

The Carters first argue that the District Court should not have dismissed their complaint on ratification grounds because the Trust did not clearly raise ratification in the District Court.  *See* Appellants Br. 10–12.  The Carters characterize the District Court's reliance on ratification under these circumstances as a "procedural" defect.  This argument is not well-taken.

As an initial matter, the defendants' memorandum in support of their motion to dismiss conspicuously raised ratification, arguing that the Carters "cannot state a claim for fraud" because they "ratified such conduct by making the payments required under the First Loan."  JA117.  Thus, the issue was raised in the District Court, and the Carters should have been fully aware that ratification was an issue in this case.[5]

More fundamentally, as the Carters correctly note, this Court reviews the District Court's order *de novo*.  *See* Appellants' Br. 9.  The Carters are, therefore, at liberty to point up any error that might exist with respect to the District Court's conclusion that they ratified the Loan agreement.

---

[5]    The Carters' observation that this Court does not appear to have discussed whether *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to affirmative defenses raised in a motion to dismiss is irrelevant here.  *See* Appellants' Br. 11. *Twombly* and *Iqbal* are pleading rules.  A motion to dismiss, of course, is not a pleading.  *See* Fed. R. Civ. P. 7 (distinguishing between pleadings and motions).

The Carters fail to make any argument that they did not ratify the Loan because there is no credible basis to deny that they in fact ratified the Loan. Not only did the Carters make payments on the Loan and retain the Property purchased with the Loan funds, but they also filed a lawsuit designed to keep the benefits of the Loan. Under long-standing North Carolina law, the Carters are required either to ratify or repudiate the entire agreement. *See Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 146 S.E.2d 390, 394 (N.C. 1966) ("It is also elementary that a contract cannot be ratified in part. The principal cannot claim the benefits without accepting the burden."); *Christian v. Yarborough*, 32 S.E. 383, 384 (N.C. 1899) ("The principal cannot, of his own mere authority, ratify a transaction in part, and repudiate as to the rest. He must either adopt the whole or none.") Because the Carters have refused to repudiate the Loan and return the Loan funds, they have necessarily ratified it.[6]

## II.    The Carters' Fraud Claim Both Fails on the Merits and Is Untimely.

As their second argument, the Carters contend that, assuming *arguendo* they ratified the signatures on the Loan documents by retaining the Property, they remain entitled to sue for "affirmative claims." *See* Appellants' Br. 12–15. In

---

[6]    The Carters also claim that they should have had an opportunity to amend or refile their complaint to address ratification. *See* Appellants' Br. 12. But it is hard—if not impossible—to conceive of any amended complaint that could in good faith plead allegations to overcome ratification, after the Carters moved into the Property and made payments on the Loan. Indeed, in their opening brief, the Carters did not even bother to offer what that amended complaint would look like.

support of this contention, the Carters cite authority for the proposition that, in the context of a claim for fraudulent inducement, the complainant may either (1) repudiate or rescind the contract and return what he received or (2) affirm the contract and sue for damages arising from the misrepresentation. *See Daniel Boone Complex, Inc. v. Furst*, 258 S.E.2d 379, 387 (N.C. Ct. App. 1979) (citing *Parker v. White*, 71 S.E.2d 122 (N.C. 1952)). Although not entirely clear from their brief, the Carters appear to argue that the District Court erred in dismissing their complaint on ratification grounds because they also alleged a claim for fraudulent inducement arising from their affirmance of the Loan.

The District Court correctly held that any claim for fraud arising from the December 1, 2005 Loan closing is barred by North Carolina's three-year limitations period. JA 218–19. As they did in the District Court, the Carters argue that the limitations period was tolled by the discovery rule and/or North Carolina's long-arm statute and/or restarted by the re-recording of the Deed of Trust. *See* Appellants' Br. 15–21. These arguments are baseless.

## A.     The Carters' Complaint Fails to Plead Fraud with Particularity.

The Carters begin not with the timeliness of the fraud claim, but rather with its merits, so the Trust begins its rebuttal argument in the same place.

10

Although the District Court dismissed the Carters' fraud claim as untimely,[7] even if it were timely, their fraud claim would still fail because it does not meet the heightened pleading standard of Rule 9(b). Federal Rule of Civil Procedure 9(b) mandates that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this heightened pleading standard, a plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Further, to have stated a claim for fraud in the inducement under North Carolina law, the Carters would have had to allege five elements with this particularity: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 678 S.E.2d 671, 684 (N.C. Ct. App. 2009) (alteration in original). The Carters' claim does not meet this heightened pleading standard.

Indeed, the Carters' fraud claim is extremely difficult to decipher. The Carters do not allege or argue that they were deceived by any false representations, about anything, at any point in time. JA023–24. Rather, the complaint curiously

---

[7]    This Court may, of course, "affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court." *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999).

concludes that "[a]s a proximate result of the forgery, [the Carters] have ostensibly become indebted on a loan that they may not have incurred had they been given the choice of whether or not to accept." JA023. Thus, in essence, the complaint mischaracterizes a completely unspecified "lack of choice" arising from the allegedly unauthorized signatures on the Loan as "fraud."

The Carters' allegations do not make out a cognizable claim for fraud. While a forgery can unquestionably serve as the basis for a fraud, the victim of such a scheme must be someone who relied to his or her detriment on a representation that the signature is authentic. For example, a bank that releases funds as a result of a forged signature or indorsement might well claim to have been defrauded. Here, by contrast, as the parties who received the benefits of the alleged forgery, the Carters cannot plausibly allege that they are the victims of a fraud.

Further, to the extent the Carters contend that they were defrauded because they "received" an adjustable-rate loan when they had applied for a fixed-rate loan, they cannot prevail. *See* Appellants' Br. 12–15. The Carters' argument under *Furst* assumes that they have affirmed the Loan—in other words, the Carters' argument assumes the signatures were authorized (which runs contrary to the allegations in their complaint). *See Am. Travel Corp. v. C. Carolina Bank & Trust Co.*, 291 S.E.2d 892, 895 (N.C. Ct. App. 1982). Under well-established North

Carolina law, a party to "a written instrument is under a duty to read it for his own protection[;] . . . [is] ordinarily . . . charged with knowledge of its contents[;] . . . [and] may [not] predicate an action for fraud on his ignorance of the legal effect of its terms." *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 555 (N.C. Ct. App. 2006) (quoting *Biesecker v. Biesecker*, 302 S.E.2d 826, 828–29 (N.C. Ct. Ap. 1983)); *see also Leonard v. Power Co.*, 70 S.E. 1061, 1063 (N.C. 1911) ("[T]he law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so."). Accordingly, even if the Carters had alleged misrepresentations related to the Loan terms (which they did not), the Carters cannot state a claim for fraud because they would be, through their authorized agents, charged with having read the documents, which means that they cannot, as a matter of law, show any misrepresentation regarding the terms of the Loan.

In addition to the myriad other problems with how the Carters' fraud claim is pled, the complaint lacks specific factual allegations *about the Trust*. The Carters accused Beth M. Holly and Mark Sellars of wrongdoing and made conclusory allegations that they are employees/agents of Right Choice and Countrywide. JA012. The Carters, however, did not allege any facts or even conclusions showing that this conduct is imputable to the Trust. Thus, even if the

13

Carters had a viable fraud theory against some of the parties involved in the Loan closing, which they do not, the Carters could not make such a claim against the Trust. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Guertin*, No. CA 3:12-2363-MBS, 2012 WL 5550770, at *2 (D.S.C. Nov. 15, 2012) ("Defendants cite no authority, nor does the court find any, to support the proposition that a subsequent assignee is imputed with and can be held liable for the wrongful conduct of a promissory note's original obligee."); *Gibson v. Am.'s Servicing Co.*, No. 5:10-CV-342-FL, 2010 WL 4974552, at *2 n.3 (E.D.N.C. Nov. 30, 2010) (rejecting a claim against a mortgage servicer based on conduct arising during loan origination); *Melton v. Family First Mortg. Corp.*, 576 S.E.2d 365, 369–70 (N.C. Ct. App.), *aff'd*, 597 S.E.2d 672 (N.C. 2003) (rejecting an unfair and deceptive trade practices claim against the subsequent purchaser of a mortgage note who did not participate in alleged improprieties during the execution of the mortgage).

**B.    The Discovery Rule Does Not Toll the Expiration of the Limitations Period Because the Carters Knew or Should Have Known About the Alleged Forgery When They Made Their First Loan Payment.**

With respect to the discovery rule, the Carters misapply the holding in *Rounsaville v. North Carolina Home Fire Insurance Co.*, 50 S.E. 619, 621 (N.C. 1905), arguing that a rule permitting suit against an undisclosed principal in a contract dispute also permits an untimely claim for fraud. In *Rounsaville*, the only issue addressed was whether "the plaintiff made such an election to hold the agent

14

liable as will preclude his resort to the principal." *Id.* at 621.  The North Carolina Supreme Court held that, "if the creditor or claimant sues the agent to judgment after a disclosure of the facts it will be a conclusive election on his part to hold the agent liable, and to discharge the principal." *Id.*  The decision makes no mention of the applicable limitations period for a claim against an undisclosed principal. *Rounsaville* addresses only the proper defendant in a contract claim, and it does not pass on the limitations period for a contract action, let alone a tort claim.[8]

As the District Court held, the timeliness of the Carters' fraud/forgery claim is inarguably controlled by N.C. Gen. Stat. § 1-52(9), which provides a three-year limitations period.  Here, any claim related to the alleged forgeries began to run when the Carters knew or should have known about the alleged fraud related to the Loan.  *See Seigel v. Patel*, 513 S.E.2d 602, 605 (N.C. Ct. App. 1999) ("The statute of limitations for fraud is three years, and begins to run at the time the aggrieved party discovered or should have reasonably discovered the facts constituting the

---

[8]    Moreover, even if *Rounsaville* had some bearing on the limitations period, it is not possible to read the Carter's complaint as a suit over a misrepresentation of the identity of the principal on a promissory note.  In addition to the fact that the complaint does not allege any misrepresentation related to the identity of the principal, the complaint does not even allege that the Trust was an undisclosed principal for Countrywide.  On the contrary, the Carters alleged that "Countrywide knowingly funded the loan," and "assigned, sold and conveyed" the Note to CWABS, Inc., which "deposited [it] in the trust."  JA016–17.  In fact, the Carters repeatedly argue that Countrywide, not the Trust, controlled the lending operation, which is in direct conflict with any assertion that the Trust was the original principal.  JA023.  There is no credible basis for the Carters to contend that the Trust was anything other than a transferee and subsequent holder of the Note.

fraud."). The Carters unquestionably knew about the Loan when they made their first payment in January 2006. Indeed, had they not known about the Loan, they could not have made that payment. Any claim for fraud therefore expired in January 2009—more than five years before they brought suit. *See Cooper v. Floyd*, 177 S.E.2d 442, 443 (N.C. Ct. App. 1970) ("[A]n action to set aside a deed on the grounds of forgery is an action for relief on the grounds of fraud, and . . . the action is barred after three years from the date of *knowledge of the forgery*." (emphasis added)).

**C.      North Carolina's Statute Tolling Claim Against Out-of-State Defendants Is Irrelevant Because the Complaint Alleges the Trust Engaged in Fraud.**

Additionally, the Carters' assertion that their fraud claim is protected by N.C. Gen. Stat. § 1-21 is unavailing. *See* Appellants' Br. 16–17. That statute reads as follows:

> If when the cause of action accrues or judgment is rendered or docketed against a person, he is out of the State, action may be commenced, or judgment enforced within the times herein limited after the return of the person into this State, and if, after such cause of action accrues or judgment is rendered or docketed, such person departs from and resides out of this State, or remains continuously absent therefrom for one year or more, the time of his absence shall not be a part of the time limited for the commencement of the action or the enforcement of the judgment. Provided, that where a cause of action arose outside of this State and is barred by the laws of the jurisdiction in which it arose, no action may be maintained in the courts of this State for the enforcement thereof, except where the cause of action originally accrued in favor of a resident of this State.

16

> The provisions of this section shall not apply to the extent that a court of this State has or continues to have jurisdiction over the person under the provisions of G.S. 1-75.4.

N.C. Gen. Stat. § 1-21.

The proper interpretation of § 1-21 was provided in *Cochrane v. Turner*, 582 F. Supp. 971 (W.D.N.C. 1983), which held:

> Section 1–21 has been construed to mean that, if the cause of action arises in another state against an out of state defendant, then the statute of limitation does not begin to run until the nonresident defendant comes into this state so that he or she is subject to the personal jurisdiction of this state's courts. This construction of § 1–21 makes sense because of the second sentence of the statute—the "borrowing statute" element of § 1–21. That sentence limits the effect of the first sentence of § 1–21 by applying the foreign state's statute of limitation in those situations where the foreign statute would bar the action. In other words, the "borrowing statute" will prevent a plaintiff from retaining the right to sue indefinitely.

*Id.* at 972–73 (internal citations omitted).

The Carters contend that their fraud claim is tolled against the Trust as an out-of-state resident under the analysis set forth in *Skinner v. Preferred Credit*, 638 S.E.2d 203 (N.C. 2006). In *Skinner*, the plaintiff alleged claims against a trust for usury and unfair and deceptive trade practices arising from a home loan. *Id.* at 208. The North Carolina Supreme Court held, *inter alia*, that the trust's possession of the promissory note and receipt of payments through a loan servicer did not establish a basis for personal jurisdiction. *Id.* at 209. The Carters contend that North Carolina courts lacked jurisdiction over the Trust because its "possession of

17

the fraudulently-created note or its status as the beneficial owner of the forged deed of trust by and through its nominee," are likewise insufficient to establish jurisdiction under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4. Appellants' Br. 16–17.

The Carters' argument is flawed. The Carters do not allege a usury-based claim against the Trust arising from its mere receipt of unlawful payments as the *Skinner* plaintiff asserted. *See Skinner*, 638 S.E.2d at 208; N.C. Gen. Stat. § 24-2 (stipulating that anyone receiving payment under usurious loan may incur liability). On the contrary, the Carters purport to allege that the Trust knowingly defrauded them (*i.e.* made intentional misrepresentations of fact to the Carters), in connection with their Loan closing. JA013. Yet, for purposes of the jurisdictional analysis, the Carters ignore the requirements for fraud and portray the Trust as a purely passive entity. As a result, the basis for Carters' fraud claim and their argument under § 1-21 are in conflict. The Trust either engaged in fraud, in which case the Carters have neither alleged a claim "arising in another state" nor any reason a North Carolina court would not have had jurisdiction over the Trust under § 1-75.4, or the Trust did not engage in fraud and was arguably beyond the

18

jurisdiction of North Carolina courts. The Carters cannot, however, demonstrate a claim for fraud against the Trust that also meets the requirements of § 1-21.[9]

Furthermore, as noted in *Cochrane*, a claim barred by the limitations period of the jurisdiction in which the claim arose is also barred under § 1-21. *Cochrane*, 582 F. Supp. at 972–73. The Carters do not allege that their fraud claim arose in an alternative jurisdiction, which is itself fatal to their argument. The Carters, however, allege that the Trust's principal place of business is in California and argue that the Trust was organized under the laws of Delaware. JA010; Appellants' Br. 16. The limitations period for fraud in California and Delaware is also three years. *See* Cal. Code. Civ. Proc. § 338(d); 10 Del. C. § 8106. To the extent the Carters contend that their fraud claim is not barred because it arose in either of these jurisdictions, or any other jurisdiction where the limitations period for fraud actions is shorter than nine years, they are mistaken.

---

[9]     The North Carolina Court of Appeals reached the same conclusion in *Skinner v. Preferred Credit*, 616 S.E.2d 676, 681 (2005), *aff'd*, 638 S.E.2d 203 (2006). In addition to its conclusion that it lacked jurisdiction over the defendant-trust, it dismissed the plaintiffs' claim for unfair and deceptive trade practices because there were no allegations that the defendant-trust had engaged in any wrongful conduct in connection with the loan closing. *Id.* at 681. Although the supreme court's subsequent decision in *Skinner* embraced only the jurisdictional analysis, there is no doubt that, if the Trust did not engage in activity bringing it within the reach of the long-arm statute, the Carters' fraud claim fails on the merits and the District Court did not err.

### D.      The Re-Recording of the Deed of Trust Is Irrelevant to the Timeliness of the Complaint.

Finally, the re-recording of a deed of trust does not restart the statute of limitations.  When a plaintiff contends that he has entered into a loan as a result of fraud, the right to sue arises "at the moment of discovery by the aggrieved party of the facts constituting the fraud or mistake."  *Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 386 (N.C. Ct. App. 1996) (internal quotation marks omitted).  The re-recording of the Deed of Trust has no bearing on whether the Carters knew or should have discovered the facts of their case, which is about the Loan, not the re-recording of the Deed of Trust.  *Cf. id.* (rejecting the argument that a lender's subsequent collections of payment on a loan constitute new wrongs restarting the limitations period).  The Carters knew about the Loan in January 2006, and their claim is untimely.

## III.    The Carters' Shift in the Focus of Their Quiet Title Claim Does Not Save It from Dismissal.

The Carters argue that because there is typically no statute of limitations for quiet title claims in North Carolina, their claim should not have been dismissed because "there is still the issue of what [the Carters] ratified."  Appellants' Br. 22.  They point to the re-recording of the Deed of Trust to try to create a dispute about the priority of security interests in the Property.  *See* Appellants' Br. 22–23.

Their argument fails. As a threshold matter, the Carters' central argument with respect to title was that the Deed of Trust arises from a forged instrument. JA022. The Carters sought to quiet title between themselves and the Trust through a finding that the Deed of Trust was "forged" and "void as a matter of law." JA022. The Carters also requested clarification that "the re-recording has no legal effect of changing the fraudulent nature of said documents." JA022. Neither of these requests is valid in light of their ratification.

Now, the Carters shift the focus of their quiet title/declaratory relief action to the priority of competing security interests. In addition to the fact that this theory was not alleged, the Carters, lack standing to assert such a claim. The Supreme Court has explained that the Declaratory Judgment Act's "actual controversy" requirement is synonymous with Article III's case-or-controversy requirement and stated that the controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (discussing the three elements of standing). Significantly, the Carters' rights in the Property are not at issue; their rights are the same, regardless of the priority of the security interests.

Moreover, the Carters have not alleged or demonstrated any actual controversy over the priority of liens. The Carters briefly alleged that the second

lien on their Property was incorrectly recorded as a first lien and that this error was corrected by the re-recording of both the first and second liens. JA021. Nowhere in the complaint do the Carters show that the current order of priority is wrong on any other reason to conclude that there is any dispute among any of the interested parties. The claim the Carters now seek to prosecute is purely abstract and, therefore, improper.

## IV. A Claim in Recoupment Is Not an Affirmative Claim, so It Was Properly Dismissed.

The Carters denominated Count III of their complaint as a "claim in recoupment." A claim in recoupment is not an affirmative claim; rather, it is "in the nature of a defense," which operates to reduce the amount a defendant owes to the plaintiff. *Bull v. United States*, 295 U.S. 247, 262 (1935); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415 (1998) (discussing the defensive nature of a claim in recoupment). Inasmuch as the Carters are the plaintiffs and are not facing any counterclaims in this matter, the Carters have no losses to recoup, and their claim in recoupment was properly dismissed.

## CONCLUSION

This Court should affirm the District Court's order granting the Motion to

Dismiss.[10]

Respectfully submitted,

*/s/ Nathan J. Taylor*

Nathan J. Taylor (NC Bar No. 26779)
Wm. Grayson Lambert (NC Bar No. 44549)
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2113
Facsimile: (704) 444-8875
E-mail: ntaylor@mcguirewoods.com

*Attorney for Defendant-Appellee CWABS,*
*Inc., CWABS Inc. Asset-Backed Certificates*
*Trust 2005-14, The Bank of New York*
*Mellon solely in its Capacity as Trustee for*
*the CWABS Inc. Asset-Backed Certificates*
*Trust 2005-14, and Mortgage Electronic*
*Registration Systems, Inc.*

---

[10]    The Trust agrees with the Carters that this case does not require oral argument for the Court to decide the issues raised on appeal.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,655*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[      ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[      ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: July 27, 2016                            /s/ Nathan J. Taylor                            
                                                                  *Counsel for Appellees*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 27th day of July, 2016, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Benjamin D. Busch
> Law Office of Benjamin D. Busch, PLLC
> 4220 Apex Highway, Suite 230
> Durham, North Carolina  27713
> (919) 247-4705
> ben@busch-law.com

> *Counsel for Appellants*

I further certify that on this 27th day of July, 2016, I caused the required copies of the Brief of Appellees to be hand filed with the Clerk of the Court.

/s/ Nathan J. Taylor
*Counsel for Appellees*